NORTH LUMBER COMPANY *v.* JAMES H. GARY.

WASTE. *Cutting trees. Injunction. Defendant in possession.*

An injunction will not lie at the suit of one asserting ownership of land to restrain the cutting of timber thereon by a solvent person in possession thereof claiming title thereto in good faith, there being no pending suit to which the injunctive relief is ancillary.

FROM the chancery court of Harrison county.

HON. STONE DEAVOURS, Chancellor.

The North Lumber Company, appellant, was complainant, and Gary, appellee, defendant, in the court below. From a decree dissolving an injunction, the complainant appealed to the supreme court.

*W. G. Evans,* for appellant.

The appellee has no interest in the land mentioned in this suit; the appellant holds the legal title to the land, and the appellant had a right to sue out and to maintain the injunction against the appellee to restrain him from cutting and removing timber therefrom.

*Green & Green,* for appellee.

Appellant's title has not been settled in an action at law and is controverted by appellee, who is in actual possession, and,

this being true, equity will not enjoin waste or trespass. *Poindexter* v. *Henderson,* 1 Walker (Miss.), 177.

In *Pittsworth* v. *Heapton,* 6 Vesey, Lord Chancellor Elden says: "I do not recollect that the court has ever granted an injunction against waste under any circumstances; I remember perfectly hearing from the bench very early in my life, that if the plaintiff filed a bill for an account and an injunction to restrain waste, stating that the defendant claimed by a title adverse to his, he stated himself out of court as to the injunction." See also *Davis* v. *Lee,* same authority. So in the case of *Norway* v. *Rowe,* 19 Vesey, 153, if the bill contains a statement, admitting even the pretense of a claim, on the part of the defendant, the plaintiff will have to go out of court. In the case of *Stone* v. *Maum,* 4 John. Ch. Rep., 21, it was held that an injunction to stay waste will not be granted when the title of the plaintiff is doubtful, and when the defendant is in possession by an adversary possession. *Nevitt* v. *Gillespie,* 1 How., 113; *Blewitt* v. *Vaughan,* 5 How., 418; *Skipwith* v. *Dodd,* 24 Miss., 487; *Whitfield* v. *Rogers,* 26 Miss., 84; *Eskridge* v. *Eskridge,* 51 Miss., 526; *Bogey* v. *Shute,* 4 Jones' Eq., 174.

*Ford & White,* on same side.

Appellants have proceeded in this case apparently upon the idea that a simple allegation that the act complained of imposes "irreparable injury" will in all cases warrant an injunction. The rule, as we understand it, is that the complainant must state the facts showing how and why the injury is irreparable. *Silver King Mining Co.* v. *McGregor,* 60 Am. St. Rep., 686, and note. If Gary had been insolvent so that all legal remedy would have been inadequate, a better excuse would be offered for the action of appellant in stopping him in the fulfillment of his contract. But we think this court would not, even in case of insolvency, enjoin a man out of possession of property which he was claiming in good faith. But there was and is no pretense that a judgment against Gary would not be perfectly good, and

the further fact that although the appellant knew of Gary's claim to the land, and that he had laid tram roads over·it to haul logs to furnish his own and Finkbine's mill, when they did come into court they did not even seek to have the question of title settled at all, but simply filed a bill seeking an injunction alone as if the court took judicial knowledge that appellant was the owner and Gary a trespasser.    There is not a single fact alleged upon which the court could hold that the appellant was suffering irreparable injury or damage so as to warrant invoking the drastic writ.

CALHOON, J., delivered the opinion of the court.

The original bill of the lumber company avers that it is the owner of 440 acres of land, which it describes, especially valuable to the company for its pine timber, which has a sawmill near it for the purpose of using the saw logs from it, and that Gary had repeatedly, since July 1, 1902, cut and appropriated from it a number of trees, aggregating 174; that he threatens to continue these trespasses, which have "inflicted and will inflict irreparable injury" on the company; and that "any legal remedy is inadequate," wherefore it prays a writ of injunction.    This bill was sworn to by one Fahey, as vice president of the company, "to the best of his knowledge and belief," on January 10, 1903, and a fiat for a writ of injunction was signed by the chancellor January 19, 1903, directing the writ to be issued on the execution of a bond; but the bill and fiat were not filed until February 20, 1903, when the clerk issued a regular summons to Gary to "plead, answer, or demur" to the bill; the bond for injunction having been made on the 18th of that month, but the writ of injunction was not issued until March 9, 1903. The ordinary summons and the injunction writ were both served on March 13, 1903. On the 4th of that month, however, the lumber company had filed what it calls its "amended and supplemental bill," reaffirming the facts charged in its original bill, and deraigning its title, and averring that it, and those under whom it

claims, had paid the taxes for "many years," been in "full possession and control," and had "brought suit at law" for the trespasses; that judgments at law would be "totally inadequate to repay the damages," because the timber was not for sale, but intended to be manufactured into lumber in the mill plant with greater profit than a sale of the standing trees; and it avers that Gary has brought suit in chancery to settle the title to the lands. This bill is also sworn to by R. Fahey, vice president, and neither the original nor amended bill waives answer under oath. Gary does answer under oath, and denies the ownership by the company, and asserts his own title, except as to the 200 acres in section 21, as to which he disclaims any title, and on which he denies cutting any timber, and says, if any was cut there, it was by inadvertence, and he is ready to pay for any such. As to the remaining 240 acres—all in section 20—he admits cutting trees, and proposes to continue to do so, because he says he owns that land, and he deraigns his title to that. He asserts, as to the 80 acres being the N. 1-2 of the S. W. 1-4 of the section, that his title has never been disputed by the lumber company; but there is a dispute between them as to the remaining 160 acres of section 20, as to which he says the company knew he was in possession, claiming title, when it filed its bill, and avers that the bill was filed maliciously to cripple his competitive sawmill business, and to prevent his filling his contracts for lumber. On Gary's motion the injunction was dissolved, and he was awarded $200 damages for his lawyer's fees only, and the chancellor expressly remitted him to his action at law for any other damages.

On the hearing it was admitted that the lumber company had no title to the N. 1-2 of the S. W. 1-4 of section 20, and yet it got injunction as to that, and still retains it on its appeal. Of course, the trees cut on this 80-acre tract need not be noticed. As to the trees cut on section 21, the proof shows that County Surveyor Wright had run the line between it and contiguous land of Gary's, and that Gary's cutting was strictly on his own land, as marked by his survey. But afterwards Fahey, the vice

president, and who testifies that he is the owner of the North Lumber Company, got one Garner, a deputy county surveyor, to make another survey and he ran another line, which took in a narrow strip, on which about 74 trees had been cut. Which is the right line is not free from question, but certain it is that Gary quit cutting on the strip after this new line was run. It is also certain that the cutting was done months before this suit was begun, and, Gary being solvent, no injunction could be predicated of that. As to the remaining one hundred and sixty acres—the S. 1-2 of N. E. 1-4 and E. 1-2 of S. E. 1-4 of section 20—it is a very grave question whether appellant or appellee is the actual owner. We do not propose to decide that question in this proceeding. We are content to note that Gary is in possession under *bona fide* claim of title. So, as against him, being in possession and solvent, we have a bill not in aid of any pending suit or action to try title, and to restrain waste *pendente lite;* not a bill to remove clouds from title, and thus to try the right; not one even charging the insolvency of defendant, nor asking any settlement of title; but one simply asserting title, and asking to restrain Gary from committing the trespass of cutting trees on what he claims, in all honesty and good faith, to be his own land, and which is in his own possession. This being the case shown, the chancellor did not err in dissolving the injunction.

The contention that we must reverse the chancellor because he allowed $200 attorney's fee, when the evidence showed only $150 arises out of a misconception. The witness was asked what would be a reasonable attorney's fee on a $2,000 basis of value, and answered, "Ten per cent on the first $1,000, and five per cent on the second." With this as a basis, and the further proof of values in excess of $2,000; the chancellor was well warranted in fixing the sum at $200; and, from the labor involved in the case, this is plainly a small fee.

*Affirmed.*